**UNIGLOBE GENERAL TRADING
& CONTRACTING CO.,
W.L.L., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 10–204C.

United States Court of Federal Claims.

Sept. 27, 2012.

Ron L. Woodman, Philadelphia, PA, for plaintiff.

James Sweet, United States Department of Justice, with whom were Stuart F. Delery, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Steven J. Gillingham, Assistant Director, Washington, DC, for defendant.

## OPINION

BUSH, Judge.

Now pending before the court is defendant's motion for partial dismissal, which has been fully briefed and is ripe for a decision by the court. Because the court concludes that it does not have subject matter jurisdiction over one of the three claims set forth in the complaint, defendant's motion to dismiss that claim pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC) is granted.

## BACKGROUND[1]

In this case, plaintiff seeks damages stemming from the government's alleged breach

---

1. The facts recounted here are taken from the parties' submissions. The court makes no findings of fact in this opinion.

of three separate contracts for the lease of vehicles in Kuwait. Defendant has moved to dismiss one count of the complaint on the grounds that the claim was not submitted to the contracting officer within six years of the date on which it first accrued, and that the instant suit was not filed in this court within twelve months of the contracting officer's final decision on the claim. For those reasons, defendant asserts that the claim is untimely and must therefore be dismissed pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction.

## I. Factual History

Uniglobe General Trading and Contracting Company, W.L.L. (Uniglobe) is a Kuwaiti corporation with its principal place of business in Kuwait. In 2003, Uniglobe entered into three contracts with the United States Department of the Army (Army), under which Uniglobe agreed to lease various types of vehicles to the Army to be used in support of Operation Iraqi Freedom. Under those contracts, the Army leased from Uniglobe: (1) a number of Chevy Suburbans under Contract DABM06–03–P–0363 (the 363 contract); (2) several trucks under Contract DABM06–03–P–0432 (the 432 contract); and (3) five Caterpillar construction vehicles (Caterpillars) under Contract DABM06–03–P–0442 (the 442 contract). Because only the 442 contract is at issue in defendant's pending motion to dismiss, the court will limit its discussion of the facts in this opinion to those relevant to that contract.

The 442 contract provided that the Army would lease five Caterpillars from Uniglobe for a period of six months. Under the contract, the leasing fees for the vehicles were determined in accordance with monthly rates, which were to accrue from the beginning of the contract or the delivery of the vehicles, and would continue until the expiration of the contract term or the termination of the contract. The contract further provided that it would be subject to the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613 (2006) (CDA), and that the parties' failure to reach an agreement with respect to any claim under the contract was to be resolved in accordance with section 52.233–1 of the Federal Acquisition Regulation (FAR), 48 C.F.R. § 52.233–1 (2011).[2]

In accordance with the 442 contract, Uniglobe delivered five Caterpillars to an Army encampment in Kuwait on April 1, 2003. On April 10, 2003, the Army contacted Uniglobe to discuss the condition of four of those vehicles. In response to the Army's concerns, Uniglobe delivered four replacement Caterpillars to the encampment the same day and removed two of the original vehicles for maintenance, leaving the Army with a total of seven Caterpillars at the encampment. The next day, Uniglobe personnel attempted to retrieve the two Caterpillars still in need of repairs, but they were denied entry to the site. Uniglobe made repeated attempts to remove those vehicles, but the Army would not allow Uniglobe's employees to enter the installation.

In May 2003, the Army informed Uniglobe that it was cancelling the 442 contract. Uniglobe sent field drivers to the Army encampment on May 25, 2003 to recover the seven Caterpillars still in the Army's possession, but two of those vehicles could not be located at that time. The two missing vehicles were subsequently recovered from Camp Arifjan and Camp Virginia in Kuwait on September 9, 2003 and October 29, 2003, respectively. The Caterpillar discovered at Camp Virginia was severely damaged, and its removal from that location required the use of salvage equipment.[3]

**2.** On January 4, 2011, subsequent to the parties' briefing in this case, Congress amended the CDA and moved its provisions to sections 7101 through 7109 of Title 41 of the United States Code. *See* Pub.L. No. 111–350, 124 Stat. 3677 (Jan. 4, 2011). The amendment did not make any substantive changes to the sections of the CDA at issue in this case. For ease of reference, the court will refer to the section numbers referenced by the parties in their briefing—*i.e.*, the

section numbers that were superseded by the January 2011 amendments.

**3.** Although the Caterpillar was not recovered from Camp Virginia until October 29, 2003, a report prepared by an Army sergeant states that the vehicle had been on the site since returning from Iraq on or about August 1, 2003. *See* Compl. Ex. D.

On March 21, 2004, Uniglobe submitted a claim to the contracting officer regarding the 442 contract. *See* Pl.'s Resp. Ex. A at 2. In its claim, Uniglobe requested payment in the amount of KWD 24,282.590, which represented the cost of repairing the disabled vehicle recovered from Camp Virginia.[4] *Id.* It does not appear that the March 21, 2004 claim sought damages for the unpaid leasing fees for the two Caterpillars retained by the Army outside the contractual period of performance.[5]

Eighteen months later, on September 26, 2005, Major Rosiher Sibaja of the Army's contracting command e-mailed his final decision on the March 2004 claim to a Uniglobe employee named Dina.[6] *Id.* Ex. A at 1. The final determination, which was dated August 30, 2005, stated that the amount requested in Uniglobe's claim was unreasonable, and that Uniglobe was entitled to a payment of no more than KWD 2880 because the Army had overpaid Uniglobe for the lease of the Caterpillars. *Id.* Ex. A at 2–3. Major Sibaja's transmittal e-mail identified the document as the contracting officer's final decision and asked that if Uniglobe was "satisfied with the determination, let me know by email, or by writing so on the document and faxing/emailing it back to me." *Id.* Ex. A at 1. In the event that Uniglobe was dissatisfied with the Army's determination, the final decision stated that Uniglobe could challenge that decision in this court within twelve months of its receipt of the final determination. *Id.* Ex. A at 3.

On October 3, 2005, Dr. Iesa M. Jasem, Uniglobe's chief executive officer, provided Major Sibaja with several invoices and other documents concerning the 442 contract. *See id.* Ex. B. A few weeks later, on October 23, 2005, Major Sibaja e-mailed a revised version of the final determination to Dina at Uniglobe. *Id.* Ex. C at 1. In his revised determination, which was also dated August 30, 2005,

Major Sibaja increased the reasonable cost of the damaged Caterpillar from KWD 11,200 to KWD 14,000. *Id.* Ex. C at 2. As a result of that change, the revised determination concluded that Uniglobe was entitled to a total payment in the amount of KWD 5680. *Id.* Like the first version, the revised determination stated that it was the final decision of the contracting officer, and noted that any suit challenging that decision in this court had to be filed within twelve months of Uniglobe's receipt of the decision. *Id.* Ex. C at 3. In his transmittal e-mail, Major Sibaja asked Dina to confirm her receipt of the decision and to indicate via e-mail or facsimile whether Uniglobe concurred with the decision. *Id.* Ex. C at 1.

On November 10, 2005, Uniglobe e-mailed a signed copy of the October 23, 2005 revised determination to Lieutenant Colonel (LTC) Raymond Strother, Major Sibaja's replacement at the Army contracting command. *See* Pl.'s Resp. Ex. F at 1. In her e-mail to LTC Strother, Dina stated that she had already made a number of unsuccessful attempts to transmit the signed final determination via facsimile. *Id.*

On December 10, 2005, Uniglobe sent an e-mail to LTC Strother inquiring as to the status of final settlement of the 442 contract. *Id.* Ex. E. In her e-mail, Dina listed the documents that Uniglobe had already provided in support of its claim, and stated that Uniglobe needed to receive payment on the claim in order to repair the damaged Caterpillar and to settle its liabilities with the owner of the vehicle. *Id.* LTC Strother responded that the Army was reviewing the claim and expected to render a final decision by March 20, 2006. *Id.*

On February 3, 2006, LTC Strother sent an e-mail to Dina to confirm that Uniglobe had in fact agreed to the settlement proposed in the revised final determination, which stated that Uniglobe was entitled to a total pay-

---

4. The Kuwaiti dinar (KWD) is the official currency of the State of Kuwait. It appears that the exchange rate during the relevant time period was 0.28 KWD for each U.S. dollar. *See* Pl.'s Resp. Ex. A at 3.

5. The initial final determination states that plaintiff had filed an earlier claim, in which it request-

ed leasing fees for the two late-returned vehicles. Pl.'s Resp. Ex. A at 2.

6. In e-mail correspondence, Army personnel sometimes addressed Dina as "Deena" or "Ms. Deena." *See* Pl.'s Resp. Exs. E–G.

ment in the amount of KWD 5680.[7] *Id.* Ex. F at 1. Two days later, Uniglobe sent an e-mail to LTC Strother indicating its acceptance of the payment of KWD 5680 to settle its initial claim under the 442 contract. *Id.* Ex. F at 2.

On March 25, 2006, Uniglobe e-mailed LTC Strother to inquire as to the status of payment on its claim for the 442 contract. *Id.* Ex. G. In his response sent the same day, LTC Strother stated that all actions on the 442 contract claim would be completed and that a final decision on the claim would be made within thirty days. *Id.*

There is no evidence in the record of any further correspondence between Uniglobe and the government between March 2006 and November 2007. It is not clear whether the parties communicated during that twenty-month period, or whether the parties simply failed to provide documentation of such correspondence to the court. In any event, on November 9, 2007, LTC Ramona McCaa, who it appears had replaced one of LTC Strother's successors at the contracting command, sent an e-mail to Uniglobe regarding settlement of the 442 contract.[8] Def.'s Reply Ex. 1 ¶ 3. In that e-mail, LTC McCaa noted Uniglobe's unresponsiveness to the Army's attempts to settle and pay the claim and stated that the claim would be denied if Uniglobe failed to respond by November 15, 2007. *Id.*

Uniglobe sent a response to LTC McCaa's e-mail on November 10, 2007. In his e-mail, Dr. Jasem stated that he had previously agreed to meet with one of LTC McCaa's predecessors to discuss the claim but had failed to make any final arrangements for that meeting. Dr. Jasem apologized for the miscommunication and requested a new meeting with LTC McCaa to discuss settlement of the claim. *Id.* It is not clear from the record whether that meeting ever occurred.

On November 14, 2007, LTC McCaa sent an e-mail to Uniglobe, in which she asked for confirmation regarding the sums owed Uniglobe by the government in order to settle the claims by Friday, November 16, 2007, and requested that Uniglobe provide release statements for the settlement of the disputed contracts. Pl.'s Resp. Ex. H at 1. It appears that LTC McCaa attached a copy of the revised final decision to that e-mail. The e-mail stated that the claim on the 432 contract had been settled, but further noted that Uniglobe was still entitled to payment on its claims for the 363 and 442 contracts. In addition, the internal memorandum to record indicates that the funds needed to settle those remaining claims were sent to LTC McCaa for the purpose of making a payment to Uniglobe. Def.'s Reply Ex. 1 ¶ 4. Although the record does not indicate whether Uniglobe responded to the request for release statements, it is clear that Dr. Jasem received that request and forwarded it to his attorneys in the United States. *See* Pl.'s Resp. Ex. H. at 1.

On November 17, 2007, LTC McCaa sent an e-mail to Dr. Jasem stating that the Army was denying Uniglobe's claims on all three of its contracts with the government due to Uniglobe's failure to respond to her repeated communications. Def.'s Reply Ex. 1 ¶ 5. On November 19, 2007, Dr. Jasem sent an e-mail to LTC McCaa, in which he indicated that all further communications related to the contract should be directed to Uniglobe's attorneys. Pl.'s Resp. Ex. H at 2. LTC McCaa responded that she would contact those attorneys because the Army was prepared to make a payment to settle Uniglobe's claims. *Id.*

Following her last communication with Dr. Jasem, LTC McCaa forwarded her file on the 442 claim to Major Witherspoon in the Judge Advocate General Corps. Def.'s Reply Ex. 1 ¶ 6. When Major Witherspoon contacted counsel for Uniglobe, he was informed that

---

7. LTC Strother's February 3, 2006 e-mail was a response to an e-mail sent by Uniglobe in November 2005, which included a signed copy of the contracting officer's revised final decision. *See* Pl.'s Resp. Ex. F at 1.

8. In an internal memorandum for record, LTC McCaa indicated that Uniglobe's claim had already been reviewed by two different officers at the contracting command before being forwarded to her on November 9, 2007. *See* Def.'s Reply Ex. 1 ¶ 2. Neither of the named officers was Major Sibaja or LTC Strother.

"Uniglobe will consolidate all claims and re-submit at a later date." *Id.* Ex. 1 ¶ 7.

Approximately two years later, on November 5, 2009, Uniglobe once again submitted a claim to the contracting officer in connection with the three contracts at issue in this suit. *See* Compl. Ex. A. In all, Uniglobe now demanded a total of KWD 2,212,741.488 in damages and interest for the government's alleged breach of those contracts. With respect to the 442 contract, Uniglobe sought a total of KWD 123,575.665, which included KWD 73,082.590 in damages and KWD 50,-493.075 in accrued interest. On January 7, 2010, Uniglobe requested an update on the status of the November 2009 claim. *Id.* ¶ 5. The next day, the Army responded that it was in the process of reviewing the claim and requested thirty additional days to complete its review. *Id.* ¶ 6. The Army had not yet rendered a final decision on Uniglobe's November 5, 2009 claim when this suit was filed on April 6, 2010. *Id.* ¶¶ 8–10.

## II. Procedural History

Uniglobe filed its complaint on April 6, 2010. In the complaint, plaintiff seeks damages for the Army's alleged breach of its three contracts with Uniglobe. With respect to the 442 contract, plaintiff argues that it is entitled to damages to cover the rental fees for the two Caterpillars retained by the Army beyond the contractual period of performance, as well as the costs of repairing the damaged Caterpillar recovered from Camp Virginia.

Defendant filed a motion to dismiss the entire complaint on June 7, 2010. In that motion, defendant asserts, *inter alia,* that the claim related to the 442 contract must be dismissed as untimely because the claim was not filed until November 2009, more than six years after the date on which it first accrued.[9] *See* 28 U.S.C. § 2501 (2006).

In its response to defendant's motion to dismiss, Uniglobe argues that its claim is not untimely because the six-year statute of limitations was equitably tolled by the government's wrongful conduct. Uniglobe also asserts that its claim for breach of the 442 contract did not accrue until November 2007.

In the reply in support of its motion to dismiss, the government argues that the six-year presentment period of the CDA cannot be equitably tolled by voluntary negotiations between the parties. The government also asserts that the instant suit must be dismissed on the additional basis that Uniglobe failed to meet the twelve-month statute of limitations set forth in the CDA.

With leave of the court, Uniglobe filed a sur-reply to defendant's reply, in which plaintiff advanced two principal arguments. First, Uniglobe asserts that any arguments based on the twelve-month statute of limitations were waived because defendant did not raise those arguments in its initial motion to dismiss. Second, Uniglobe argues that further discovery is needed to determine whether it actually received a final decision on its claim.

In its response to the sur-reply, defendant asserts that it did not waive any arguments based on the twelve-month statute of limitations contained in section 609(a)(3). First, defendant contends that its argument challenges the subject matter jurisdiction of this court under RCFC 12(b)(1) and thus cannot be waived. In addition, defendant disputes Uniglobe's contention that the arguments based on section 609(a)(3) are "new arguments" that were raised for the first time in a reply brief.

Pursuant to the parties' request, proceedings in this case have been stayed since February 2011 to allow the parties to negotiate a settlement of some or all of the claims set forth in the complaint.[10] On August 1,

---

9. In the initial motion to dismiss, the government sought to dismiss the entire complaint on the basis that Uniglobe had not met the requirements of the Reciprocity Act, 28 U.S.C. § 2502 (2006). The government subsequently filed a motion to withdraw its arguments based upon the Reciprocity Act, which the court granted. As a result, the government now moves to dismiss only the claim based upon the 442 contract.

10. While proceedings in this case were stayed, the former attorney of record for Uniglobe filed a motion to withdraw as counsel for plaintiff, citing a breakdown in the attorney-client relationship. The court granted that motion in March 2012. Two months later, an attorney from the same law firm filed a motion to substitute himself as the new attorney of record for Uniglobe.

2012, however, the parties filed a joint status report informing the court that the parties were unable to reach a settlement agreement, and requesting that the court lift the existing stay in this case and resolve defendant's pending motion to dismiss.

## DISCUSSION

### I. Standard of Review

█ In rendering a decision on a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), this court must presume all undisputed factual allegations to be true and must construe all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 814–15, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988). The relevant issue in a motion to dismiss under RCFC 12(b)(1) " 'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Patton v. United States*, 64 Fed.Cl. 768, 773 (2005) (quoting *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683). The plaintiff bears the burden of establishing subject matter jurisdiction, *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed.Cir.1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)), and must do so by a preponderance of the evidence, *Reynolds*, 846 F.2d at 748 (citations omitted). The court may look at evidence outside of the pleadings in order to determine its jurisdiction over a case. *Martinez v. United States*, 48 Fed.Cl. 851, 857 (2001) (citing *RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1461–62 (Fed.Cir.1998); *Rocovich v. United States*, 933 F.2d 991, 993 (Fed.Cir.1991)), *aff'd in relevant part*, 281 F.3d 1376 (Fed.

Cir.2002). "Indeed, the court may, and often must, find facts on its own." *Id.* If jurisdiction is found to be lacking, this court must dismiss the action. RCFC 12(h)(3).

### II. Analysis

Defendant argues that the court must grant its motion to dismiss for several reasons. First, according to defendant, the claim related to the 442 contract is barred under the general six-year statute of limitations set forth in section 2501. In addition, defendant further argues that the claim on the 442 contract is barred under the six-year presentment period set forth in section 605 of the CDA as well as the twelve-month statute of limitations set forth in section 609 of the CDA. For the reasons discussed below, the court holds that defendant's motion for partial dismissal must be granted.

### A. The Six–Year Statute of Limitations of Section 2501

█ First, defendant asserts that the claim related to the 442 contract is barred under the six-year statute of limitations set forth in section 2501. *See* Def.'s Mot. at 5–6. That assertion is incorrect. Section 2501 provides in relevant part that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. In their arguments, the parties make little effort to distinguish between the six-year statute of limitations contained in section 2501 and the six-year presentment period set forth in section 605(a) of the CDA.[11] However, those two sections are not interchangeable; they serve distinct purposes and are governed by different rules of application. Most important here, the United States Court of Appeals for the Federal Cir-

The court granted that motion on June 1, 2012. In a joint status report dated June 29, 2012, the parties informed the court that settlement negotiations had resumed.

**11.** For example, Uniglobe cites the Federal Circuit's decision in *Arctic Slope Native Assoc., Ltd. v. Sebelius*, 583 F.3d 785 (Fed.Cir.2009), in response to defendant's argument that section 2501 is not subject to equitable tolling. However, that

case held that the six-year presentment period of section 605(a) may be tolled for equitable reasons. In contrast, there is no question that the six-year statute of limitations contained in section 2501 is jurisdictional and is not subject to tolling, waiver, or estoppel. *See John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133–34, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008).

cuit and this court have held that the six-year statute of limitations contained in section 2501 does not apply to suits brought under the CDA. *See Pathman Constr. Co. v. United States*, 817 F.2d 1573, 1580 (Fed.Cir.1987) ("Once a contractor elects to proceed under the [Contract] Disputes Act, the six-year statute of limitations in 28 U.S.C. § 2501 is not applicable."); *Sys. Planning Corp. v. United States*, 95 Fed.Cl. 1, 4 (2010) (holding that the six-year statute of limitations in section 2501 does not apply to suits under the CDA). For that reason, the court need not determine whether the present suit was filed within the six-year limitations period of section 2501 because that statute of limitations is inapplicable to CDA claims such as this.

**B. The CDA's Presentment Requirement and Statute of Limitations**

■ Defendant next argues that its motion to dismiss must be granted because Uniglobe failed to meet the six-year presentment requirement of the CDA, the twelve-month statute of limitations of the CDA, or both. The court addresses those arguments in turn. Before filing suit in this court under the CDA, a plaintiff must first submit a written claim to the contracting officer for a final decision. 41 U.S.C. § 605(a).[12] Although the CDA does not define the term "claim," the FAR describes a claim as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." 48 C.F.R. § 2.101 (2011). The submission of a written claim to the contracting officer and a final decision on that claim are jurisdictional prerequisites to a suit in this court. *See M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed.Cir.2010) ("This

Court has found that jurisdiction thus requires both a valid claim and a contracting officer's final decision on that claim.") (citation omitted); *England v. Swanson Group, Inc.*, 353 F.3d 1375, 1379 (Fed.Cir.2004) ("We have held, based on the statutory provisions [of the CDA], that the jurisdiction over an appeal of a contracting officer's decision is lacking unless the contractor's claim is first presented to the contracting officer and that officer renders a final decision on the claim.") (citing *James M. Ellett Constr. Co. v. United States*, 93 F.3d 1537, 1541–42 (Fed.Cir.1996)); *Sharman Co. v. United States*, 2 F.3d 1564, 1568 (Fed.Cir.1993) ("Under the CDA, a final decision by the contracting officer on a claim, whether asserted by the contractor or the government, is a 'jurisdictional prerequisite' to further legal action thereon."), *overruled on other grounds by Reflectone, Inc. v. Dalton*, 60 F.3d 1572 (Fed.Cir.1995) (*en banc*).

■ Section 605(a) of the CDA further provides that "[e]ach claim by a contractor against the government relating to a contract ... shall be submitted within 6 years after the accrual of the claim." 41 U.S.C. § 605(a). The six-year requirement set forth in the CDA is not a limit on the time in which a suit must be filed in this court; rather, the "presentment period," as it is also known, requires a contractor to file a written claim with the contracting officer within six years after the accrual of that claim. In addition to the six-year presentment period, the CDA includes a separate one-year statute of limitations that applies when a final decision of a contracting officer is appealed to this court. 41 U.S.C. § 609(a)(3) (noting that an appeal of a contracting officer's final decision "shall be filed [in this court] within twelve months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim").[13]

---

12. The presentment requirement is now contained in section 7103(a).

13. The twelve-month statute of limitations is now contained in section 7104(b)(3). When the contracting officer fails to issue a decision on the claim within the specified time period—generally sixty days—the claim is deemed to have been denied for purposes of seeking judicial review. *See* 41 U.S.C.A. § 7103(f)(5). The twelve-month statute of limitations for claims under the CDA

does not begin to run, however, until the contracting officer has actually issued a final decision on the claim. *See Patton v. United States*, 74 Fed.Cl. 110, 115–16 (2006) ("The Court of Appeals for the Federal Circuit has held that because the limitations period begins to run upon *receipt* of a decision, the limitations period is only triggered by a written decision, not by a deemed denial." (citing *Pathman*, 817 F.2d at 1576)).

To survive defendant's motion to dismiss, Uniglobe must demonstrate that it has satisfied both the six-year presentment requirement and the twelve-month statute of limitations contained in the CDA. For the reasons discussed below, the court holds that plaintiff has failed to do so here.

### 1. The Six–Year Presentment Requirement of the CDA

The government notes that the CDA requires a contractor to submit a written claim to the contracting officer within six years of the accrual of that claim, and that a contractor's failure to meet that six-year presentment requirement of the CDA divests this court of jurisdiction over any subsequent suit based upon the same claim. Defendant argues that the claim related to the 442 contract accrued no later than October 29, 2003. For that reason, the government argues that the court must dismiss any portion of this suit based on the November 2009 written claim, which was filed with the contracting officer more than six years after its accrual.

In determining whether Uniglobe satisfied the six-year presentment period of the CDA, the court must first establish: (1) when Uniglobe's breach claim based on the 442 contract first accrued; and (2) when Uniglobe first filed a written claim related to the 442 contract with the contracting officer. Next, the court must determine whether (2) occurred within six years of (1). As discussed below, the court holds that one of Uniglobe's written claims satisfied that requirement, but one of them did not.

### a. When Did Uniglobe's Claim First Accrue?

First, the court must determine when Uniglobe's claim first accrued and thus when the six-year presentment period of the CDA began to run. In this suit, Uniglobe seeks damages for lease payments on two Caterpillars during the period of time between the cancellation of the 442 contract and the recovery of the vehicles from the Army, as well as the cost of repairing one of those vehicles. Under the FAR, a claim accrues on "the date when all events, that fix the alleged liability of either the Government or the contractor and permit assertion of the claim, were known or should have been known." 48 C.F.R. § 33.201 (2011). In order for a claim to accrue, "some injury must have occurred." *Id.* The court concludes that the claim for breach of the 442 contract accrued no later than October 29, 2003, when Uniglobe recovered the last remaining vehicle from the Army. At that time, the full extent of the government's alleged liability under that contract would have been apparent. *See American Ordnance LLC v. United States,* 83 Fed. Cl. 559, 575 (2008) ("In a breach of contract claim, the claim accrues when the aggrieved party knew or should have known it had incurred injury.") (citations omitted).

Plaintiff appears to argue that its breach claim against the government based on the 442 contract did not accrue until November 2007, when the Army reversed its earlier decision to make a settlement payment to Uniglobe. Defendant argues, in contrast, that if any claim against the government had accrued in November 2007, that claim would have been one for breach of the parties' putative settlement agreement rather than a breach of the 442 contract. Because the complaint does not allege that defendant breached any settlement agreement, defendant argues that any such claim must be dismissed under RCFC 12(b)(6) for failure to state a claim. The court agrees. Uniglobe's complaint in this case is based in part on the government's alleged breach of the 442 contract, and the full extent of the government's liability under that contract was, or should have been, apparent by October 29, 2003.[14]

---

14. In its briefing, Uniglobe conflates a number of related, but distinct, arguments related to the timeliness of its claims. In that regard, plaintiff appears to assert that negotiations between the parties subsequent to the October 2005 revised decision of the contracting officer (1) suspended the accrual of its breach claim; (2) delayed the finality of the contracting officer's decision on that claim; and (3) equitably tolled the six-year presentment period of the CDA, the twelve-month statute of limitations of the CDA, or both. While each of those arguments might affect the timeliness of Uniglobe's suit, they are not interchangeable. The accrual-suspension rule, for example, might delay the commencement of a jurisdictional limitations period, but a jurisdictional statute of limitations cannot be equitably tolled once a claim has accrued. *See, e.g., Young v. United States,* 529 F.3d 1380, 1384 (Fed.Cir.2008) (noting the distinction between

*See* Compl. ¶ 36 (stating that plaintiff is entitled to the payment of leasing fees from the date on which the 442 contract was terminated "until the recovery dates on September 9, 2003 and October 29, 2003, respectively"); Ex. C at 4 (clause in the 442 contract stating that "rent shall accrue only for the period that each vehicle is in the possession of the Government").

### b. When Did Uniglobe File a Written Claim with the Contracting Officer?

Next, the court must determine when Uniglobe filed a written claim with the contracting officer. The court notes that Uniglobe filed at least two separate written claims related to the 442 contract with the contracting officer.[15] First, plaintiff filed a written claim for breach of the 442 contract on March 21, 2004. The March 2004 claim requested damages in the amount of KWD 24,282.590 to cover the costs of repairs needed for the damaged Caterpillar that was recovered from Camp Virginia in October 2003. In its complaint, plaintiff makes no specific reference to the March 2004 claim, the Army's multiple decisions on that claim, or the protracted discussions between the parties with respect to that claim. However, plaintiff does state that it "has presented invoices and supporting documentation to the Army on many occasions for payment under the Contracts over the course of several years." Compl. ¶ 48.

In addition, plaintiff filed a second claim related to the 442 contract on November 5, 2009. It is that claim, rather than the earlier claim filed in 2004, that Uniglobe asserts in its complaint as the basis for the instant suit. In contrast to the March 2004 written claim, the claim filed in November 2009 covers all three of Uniglobe's contracts with the government, and it encompasses not only the costs of repairing the damaged vehicle, but the rental fees for the two Caterpillars retained by the Army beyond the contractual period of performance, as well as interest on both of those amounts. The total amount of damages requested by Uniglobe for the 442 contract in the November 2009 claim is KWD 123,575.665.

### c. Were Either of Uniglobe's Written Claims filed with the Contracting Officer within Six Years of the Accrual of Its Claim on the 442 Contract?

■ Finally, the court must determine whether either of the written claims noted above was filed with the contracting officer within six years of the date on which it first accrued. Because the original claim accrued on October 29, 2003, Uniglobe was required to file a written claim with the contracting officer no later than October 29, 2009 in order to meet the six-year presentment requirement set forth in section 605(a). While this court concludes that plaintiff complied with that requirement, it does not reach that conclusion for the reasons urged by plaintiff.

The March 2004 written claim was filed with the contracting officer less than five months after Uniglobe's breach claim on the 442 contract first accrued. Because that written claim was filed well within the six-year presentment period set forth in section 605(a), the court need not address whether the applicable presentment period was tolled by any conduct on the part of the government with respect to that initial claim.

Because the court has held that Uniglobe's original claim for breach of the 442 contract

---

the accrual-suspension rule and equitable tolling); *Ingrum v. United States,* 81 Fed.Cl. 661, 666 n. 6 (2008) (explaining that, in the context of the general six-year statute of limitations set forth in section 2501, the distinction between equitable tolling and the accrual-suspension rule is a "distinction with a difference").

**15.** In addition to the two claims discussed herein, the initial final determination on the claim filed in March 2004 states that Uniglobe had filed an even earlier claim seeking the payment of late leasing fees for the Caterpillar construction vehicles. Pl.'s Resp. Ex. A at 2 ("The contractor has previously filed a claim for lease charges against the equipment in this contract. The contracting officer's final decision and legal opinion on this previous claim for lease charges is included in the supported documents tab B. The contractor was overpaid for equipment that the government had not accepted due to its poor condition."); *see also id.* at 2 ("Uniglobe promptly filed its claim and invoices to the Army contracting officer at Camp Arifjan, Kuwait for leasing fees as well as damages sustained by the Caterpillars."). Neither of the parties provided a copy of the referenced claim or decision related to the late leasing fees.

accrued on or about October 29, 2003, however, the written claim submitted on November 5, 2009 was not filed with the contracting officer within six years of the date on which it first accrued. Plaintiff nonetheless argues that its claim should not be dismissed for two reasons. First, plaintiff asserts that its claim did not accrue until November 2007, when the Army informed Uniglobe that it would not honor its earlier promise to make a payment to settle the 442 contract. In addition, plaintiff asserts that the six-year presentment period was equitably tolled by the wrongful conduct of the Army. For the reasons discussed below, both of those arguments are without merit.

First, the court has already determined that Uniglobe's claim for breach of the 442 contract accrued on or about October 29, 2003. By that date, Uniglobe was aware that one of the leased Caterpillars was severely damaged, and that plaintiff was entitled to the payment of a precise amount of money for leasing fees beyond the contract period. Based on its knowledge of those facts, Uniglobe filed a claim with the contracting officer on March 21, 2004 for repair damages, and the record indicates that Uniglobe filed an earlier claim for the unpaid leasing fees. However, Uniglobe argues that its claim for breach of the 442 contract did not accrue until November 2007, when the Army informed plaintiff that it would no longer honor the parties' earlier agreement to settle the claim. While the government's conduct in November 2007, as defendant notes, may or may not be argued to have breached a settlement agreement between the parties, the instant suit is not based upon the breach of any settlement agreement; on the contrary, plaintiff alleges in its complaint only that the Army breached the 442 contract.[16]

Second, the court further holds that the six-year presentment period should not be equitably tolled in this case. Although plain-tiff is correct in its assertion that the six-year presentment period of the CDA is subject to equitable tolling, *see Arctic Slope Native Assoc., Ltd. v. Sebelius*, 583 F.3d 785, 798–800 (Fed.Cir.2009), the court holds that such tolling would not be appropriate in this case. As the United States Supreme Court has noted,

> [f]ederal courts have typically extended equitable relief only sparingly. We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.

*Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990).

In this case, there is no evidence that Uniglobe was "induced or tricked" by any misconduct on the part of the government. Uniglobe argues that the Army misled plaintiff into believing that a final decision on its claim had not yet been rendered. However, the language of the October 23, 2005 revised final determination unequivocally stated that it was the "final decision of the Contracting Officer." Pl.'s Resp. Ex. C at 3. Furthermore, it appears that the parties' inability to settle that claim arose as a result of a mutual breakdown of communication between the parties, exacerbated somewhat by significant turnover of military personnel at the Army's contracting command following issuance of the final determination on the initial written claim, rather than any inequitable conduct on the part of the government. The court concludes that there is no equitable justification for tolling the six-year presentment period in this case.[17]

---

**16.** Defendant further argues that if anybody breached the settlement agreement between the parties, it was Uniglobe. In that regard, defendant notes that when the government contacted Uniglobe's attorney in an attempt to disburse the funds contemplated under the settlement, that attorney informed the government that "Uni-globe will consolidate all claims and resubmit at a later date." Def.'s Reply Ex. 1 ¶ 7.

**17.** The court further notes that the claim submitted to the contracting officer on November 5, 2009 is not a proper claim at all for purposes of this court's jurisdiction under the CDA. Uniglobe's CDA claims on the 442 contract had been

In short, the court holds that the March 21, 2004 CDA claim was filed with the contracting officer within the six-year presentment period of the CDA, but the subsequent claim filed with the contracting officer on November 5, 2009 was not. For that reason, the November 2009 claim cannot form the jurisdictional basis for this suit, and that claim will therefore not be discussed further herein. The court must next determine whether the denial of the March 2004 claim was appealed to this court within the twelve-month statute of limitations set forth in the CDA.

### 2. The Twelve–Month Statute of Limitations of the CDA

In evaluating whether Uniglobe satisfied the statute of limitations set forth in the CDA with respect to its claim on the 442 contract, the court must determine exactly when Uniglobe received a final decision from the contracting officer on the written claim submitted in March 2004, and whether this suit was filed within twelve months of that date. For the reasons discussed below, the court holds that Uniglobe did not file this suit until well after the statute of limitations had lapsed on its breach claim related to the 442 contract.

### a. When Did Uniglobe Receive a Final Decision on the March 2004 Written Claim?

■ The contracting officer e-mailed his initial final decision on the March 2004 written claim to Uniglobe on September 26, 2005, and he e-mailed a revised final decision to Uniglobe on October 23, 2005. Uniglobe nonetheless argues that factual discovery is necessary to determine when—if ever—it received a final decision from the contracting officer with respect to its claim on the 442 contract. Uniglobe does not contend that it never received the two decisions noted above; instead, Uniglobe argues that neither of those decisions was a "final decision" because subsequent negotiations with the Army called the finality of those decisions into

question. The court disagrees. First, the express language of the revised decision provided to Uniglobe on October 23, 2005 could not have been clearer in that regard:

> This is the final decision of the Contracting Officer. You may appeal this decision to the agency board of contract appeals. . . . Instead, of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims within 12 months of the date you receive this decision.

Pl.'s Resp. Ex. C at 3. Thus, the October 2005 decision unambiguously stated that it was the final decision of the contracting officer, and there is no reason to presume that the government did not mean what it said.

Second, any subsequent negotiations or communications between the parties with respect to the settlement of the 442 contract did not affect the finality of the decision sent to plaintiff in October 2005. This court has held that the finality of a contracting officer's final determination may be suspended in certain limited circumstances. *See Arono, Inc. v. United States,* 49 Fed.Cl. 544, 549–52 (2001) (holding that the finality of a contracting officer's determination was suspended during his review of a request by the contractor to reconsider the final decision). The rule applied in *Arono* is inapplicable here. While the application of that rule might have suspended the finality of the contracting officer's decision during the period between the issuance of the original determination on September 26, 2005 and the issuance of the revised determination on October 23, 2005, it would not have suspended the finality of the revised determination because Uniglobe did not seek reconsideration of that decision. Plaintiff requested a sum certain from defendant for repair costs in March 2004, and defendant denied that claim in October 2005. The record also indicates that plaintiff filed a claim for unpaid leasing fees sometime before March 2004, and that the contracting

filed by March 2004, and defendant ultimately issued its final decisions on those claims by October 2005. The denial of those claims triggered the twelve-month statute of limitations set forth in section 609(a)(3). Once the statute of limitations has started to run on a denied claim, a

contractor cannot simply restart the clock by filing the same denied claim at a later date. Allowing a contractor to repeatedly extend the limitations period by filing the same claim multiple times would wholly defeat the purposes of the CDA's statute of limitations.

officer had issued a final decision on that earlier claim sometime before September 2005, when the contracting officer e-mailed his initial final decision on the claim for repair costs to plaintiff. None of the documented communications between the parties suggest that the government was reconsidering its earlier decisions on Uniglobe's claims. Rather, those communications were limited to Uniglobe's attempts to secure payment of the sum the Army had agreed to pay, and the Army's attempts to make that payment. In sum, Uniglobe received the contracting officer's final decision on its written claims by October 23, 2005.

### b. Did Uniglobe File this Suit within Twelve Months of its Receipt of the Contracting Officer's Decision?

Under section 609(a)(3), a plaintiff is required to file suit in this court within twelve months of receiving an adverse decision on a claim from the contracting officer. Because it received the Army's final decision on October 23, 2005, plaintiff was required to file suit in this court no later than October 23, 2006. However, plaintiff did not commence the instant suit until April 6, 2010. Uniglobe argues that its claim should not be barred under section 609(a)(3) for two reasons. First, plaintiff argues that defendant has waived any arguments based on that provision because they were not raised in the initial motion to dismiss. Second, because the Army offered to make a settlement payment to Uniglobe, and because Uniglobe promptly accepted that offer, plaintiff argues that any applicable statutes of limitation were equitably tolled until the Army reneged on its initial offer and informed Uniglobe in November 2007 that it was now denying the claim.

### i. Defendant Did Not Waive Any Arguments Based on the Twelve–Month Statute of Limitations

■■■ Uniglobe asserts that any arguments based on the twelve-month statute of limitations were waived because defendant did not raise them in its initial motion to dismiss. Defendant responds that the twelve-month statute of limitations is jurisdictional in nature and is therefore not subject to waiver. Defendant also asserts that any arguments

based on the twelve-month statute of limitations would have been inapposite to the allegations set forth in the complaint, and were raised in defendant's reply in order to respond to new factual allegations raised for the first time in Uniglobe's response—*i.e.*, the existence of an earlier written claim filed in March 2004.

In general, an issue is deemed to be waived when it is raised for the first time in a reply brief. *See Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed.Cir.2002) ("Raising the issue for the first time in a reply brief does not suffice; reply briefs *reply* to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration."). However, the court concludes that defendant did not waive its argument that one of Uniglobe's claims is barred under section 609(a)(3) because the issue was raised in the context of a motion to dismiss that claim for lack of subject matter jurisdiction under RCFC 12(b)(1). Because the argument challenges this court's subject matter jurisdiction over the claim, it can be raised at any time. *See, e.g. Coastal Corp. v. United States*, 713 F.2d 728, 730 (Fed.Cir.1983) ("Jurisdiction of a tribunal ... cannot be conferred by waiver or acquiescence."); *Starobin v. United States*, 662 F.2d 747, 750 (Ct.Cl.1981) ("[T]he defense of lack of jurisdiction over the subject matter of the action can never be waived."). Indeed, the court has no choice but to dismiss any claim over which it does not possess subject matter jurisdiction. *See* RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Furthermore, even if the court were to determine that the statute of limitations contained in section 609(a)(3) is not jurisdictional in nature, it may nonetheless consider defendant's arguments based on that section because plaintiff has been afforded an opportunity to respond to those arguments in its surreply. *See Novosteel*, 284 F.3d at 1274 (noting that arguments raised for the first time in a reply brief are generally waived because "the non-moving party ordinarily has no right to respond to the reply brief, at least

not until oral argument"). Finally, because Uniglobe did not even mention the March 2004 claim in its complaint, there was no reason for the government to invoke the twelve-month statute of limitations at that time. In sum, defendant did not waive any arguments based on the twelve-month statute of limitations applicable to claims under the CDA.

### ii. The Twelve–Month Statute of Limitations Was Not Equitably Tolled in this Case

■ Uniglobe argues that the twelve-month statute of limitations should be equitably tolled in this case because the government's communications following the contracting officer's decision in October 2005 led plaintiff to believe that a final decision on its claim was still forthcoming. Defendant first argues that the twelve-month statute of limitations is jurisdictional and is therefore not subject to equitable tolling. In addition, defendant argues that plaintiff has failed to identify any misconduct on the part of the government in this case that would equitably toll the applicable limitations period.

This court has not squarely addressed whether the twelve-month limitations period of the CDA is subject to equitable tolling. *See, e.g., Envtl. Safety Consultants, Inc. v. United States*, 95 Fed.Cl. 77, 92 n. 18 (2010) (noting that "[t]here is some possibility that the twelve month statute of limitations under [section 609(a)(3) ] may be subject to equitable tolling"). The court need not address that issue here because, as noted above, plaintiff has failed to demonstrate that the government engaged in any misleading conduct that induced or tricked Uniglobe into delaying its suit. *See Frazer v. United States*, 288 F.3d 1347, 1354 (Fed.Cir.2002) (noting that a statute of limitations will be equitably tolled only when the government has misled a plaintiff into waiting to file its suit).

Furthermore, even if the court were to hold that subsequent discussions between the parties constituted misleading conduct on the part of the government, and thus held that the statute of limitations was equitably tolled while those discussions continued, the discussions were terminated on November 17, 2007 when LTC McCaa informed plaintiff that its claim on the 442 contract was being denied in its entirety. Even if the twelve-month limitations period did not begin to run until November 17, 2007, Uniglobe's suit should have been filed no later than November 17, 2008. Thus, there is no question that the claims on the 442 contract were not filed in this court within the twelve-month statute of limitations set forth in section 609(a)(3). For that reason, those claims must be dismissed under RCFC 12(b)(1) for lack of subject matter jurisdiction.

### CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that:

(1) The Clerk's Office is directed to **LIFT** the stay of proceedings in this case;

(2) Defendant's Motion for Partial Dismissal, filed June 7, 2010, is hereby **GRANTED**;

(3) The Clerk's Office is directed to **DISMISS**, without prejudice, the claim based upon Contract DABM06–03–P–0442;

(4) The parties are directed to **CONFER** to determine how they wish to proceed with respect to the remaining claims in the complaint and whether this case may be settled by the parties; and

(5) The parties shall **FILE** a **Joint Status Report** on or before **October 24, 2012** proposing the next steps in this litigation.